# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| CONTEMPORARY DISPLAY LLC,<br><br>                  Plaintiff<br><br>v.<br><br>DISH NETWORK L.L.C.,<br><br>                  Defendant. | Civil Action No.: 1:18-cv-476-LY<br><br>JURY TRIAL DEMANDED<br><br>PATENT CASE |

## PLAINTIFF'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Contemporary Display LLC ("Plaintiff" or "Contemporary Display") files this Complaint against and DISH Network L.L.C. ("Defendant") seeking damages and other relief for patent infringement, and alleges with knowledge to its own acts, and on information and belief as to other matters, as follows:

## PARTIES

1.      Plaintiff is a limited liability company organized and existing under the laws of the State of Texas, having its principal place of business at 5068 West Plano Parkway, Suite 300, Plano, Texas 75093.

2.      Defendant DISH Network L.L.C. is established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112. DISH Network can be served through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).  Defendant maintains regular and established physical places of business within this judicial district, including but not limited to: (i) a Customer call center, warehouse, service, and remanufacturing center near El Paso, Texas; (ii) a micro digital broadcast operations center near Mustang Ridge, Texas; and (iii) a regional digital broadcast operations center near New Braunfels, Texas.  (DISH Annual Report for year ending 12/31/2017 at p. 58).  On information and belief, from and within this District, Defendant has committed acts of infringement at issue in this case.

5.      Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process or the Texas Long Arm Statute, due at least to Defendant's substantial business in this forum, including: (i) business related to infringing acts as alleged herein; or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.  Within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, Defendant has derived revenues from its infringing acts occurring within the Western District of Texas.  Further, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas and the Western District of Texas.  Further, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products or services within Texas and the Western District of Texas.  Defendant has committed such

purposeful acts or transactions in Texas such that they reasonably should know and expect that they could be haled into this Court because of such activity.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 6,028,643)

6. Plaintiff incorporates the above paragraphs by reference.

7. On September 3, 1997, predecessors-in-interest to Contemporary Display filed United States Patent Application No. 08/922,614 entitled "MULTIPLE-SCREEN VIDEO ADAPTER WITH TELEVISION TUNER" with the United States Patent and Trademark Office.

8. The USPTO duly and lawfully issued Application No. 08/922,614 as U.S. Patent No. 6,028,643 ("the '643 Patent") on February 22, 2000. A true and correct copy of the '643 Patent is attached hereto as "**Exhibit 1**" and is incorporated herein by reference.

9. The '643 Patent is presumed valid.

10. Plaintiff is the sole owner of the '643 Patent.

11. The '643 Patent describes problems and shortcomings in the field of video adapters for use in computers and software for controlling the adapters. *See, e.g.,* '643 Patent at col. 1, l. 13 – col. 2, l. 31.

12. The '643 Patent describes systems and methods that address a technical problem— the inability to connect a computer to multiple screens due to limited expansion slots, graphics cards with incompatible software utilities, and screens that are typically supported by their own CPU. *See, e.g.,* '643 Patent at col. 2, ll. 1-31.

13. The technological improvements described and claimed in the '643 Patent were not conventional, well-known, or routine at the time of their respective inventions but involved novel

and non-obvious approaches to problems and shortcomings prevalent in the art at the time. *See, e.g.,* '643 Patent at col. 1, l. 7 – col. 13, l. 51.

14.     The inventions claimed in the '643 Patent involve more than just the performance of well-understood, routine, or conventional activities known to the industry prior to the invention of such novel and non-obvious systems, methods, and devices. *See, e.g.,* '643 Patent at col. 1, l. 7 – col. 13, l. 51.

15.     The inventions claimed in the '643 Patent are directed to technological solutions to technological problems.

16.     The written description of the '643 Patent supports each of the limitations of the claims, allowing a person of ordinary skill in the technical art ("POSITA") to understand what the limitations cover and how the non-conventional and non-generic combination of claim elements differ markedly from and improved upon what may have been considered conventional, generic, or routine. *See, e.g.,* '643 Patent at col. 1, l. 7 – col. 13, l. 51.

17.     As demonstrated by its frequent citation (over 50) by the United Stated Patent Office in other later-issued patents and reexaminations, the '643 Patent represents a substantial technical improvement in the area of delivering information to multiple displays. *See*, *e.g.*, http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&p=1&u=%2Fnetahtml%2FPTO%2Fsearch-bool.html&r=0&f=S&l=50&TERM1=6028643&FIELD1=UREF&co1=AND&TERM2=&FIELD2=&d=PTXT . Patents citing the '643 Patent include patents assigned to Samsung Electronics Co., Hughes Electronics Corporation, LG Electronics, Cisco Technology, Inc., Intel Corporation, and Microsoft Corporation.

18.     Viewed in light of the specification of the '643 Patent, the claims are ***not directed*** to basic tools of scientific and technological work, nor are they directed to a fundamental economic practice.

19.     The '643 Patent claims are ***not directed*** to the use of an abstract mathematical formula on any general-purpose computer, or a purely conventional computer implementation of a mathematical formula, or generalized steps to be performed on a computer using conventional activity.

20.     The '643 Patent claims are ***not directed*** to a method of organizing human activity or to a fundamental economic practice long prevalent in our system of commerce.

21.     The '643 Patent ***does not*** take a well-known or established business method or process and apply it to a general-purpose computer.

22.     As noted by the United States Patents, foreign patent documents, and other publications cited by the '643 Patent, the '643 Patent ***does not*** preempt the field of its invention or preclude use of other methods and systems of delivering data to computer displays.

23.     Defendant uses, offers for sale, and sells Digital Video Recorders ("DVRs") in the United States including, but not limited to, the Hopper 3 DVR with Joey receivers ("Accused Infringing DVR Device").

24.     The Accused Infringing DVR Device is a non-limiting example that was identified based on publicly available information, and Plaintiff reserves its right to identify additional infringing activities, products and services, including, for example, on the basis of information obtained during discovery.

25.     The Accused Infringing DVR Device performs a method for displaying information on multiple display devices, comprising the steps, performed by a computer, of: providing a

computer containing an adapter which supplies signals to a plurality of monitors, the adapter containing a plurality of video tuners; displaying a tool window interface coupled to control the adapter, wherein a first display device output window having a group of selectable inputs including at least one video input, and a second display device output window having a group of selectable inputs having at least one video input, are displayed; inputting an indication that a user wishes to select a first input for the first display device output window; inputting an indication that a user wishes to select a second input for the second display device output window; causing the adapter to display, on the first display device, signals according to the first display device input indication; and causing the adapter to display, on the second display device, signals according to the second display device input indication.  *See, e.g.,*

> https://rvseniormoments.files.wordpress.com/2016/01/h3_hopper3.pdf;
>
> http://about.dish.com/2016-01-05-DISH-Unveils-Hopper-3-with-Enhanced-4K-Experience-Most-Simultaneous-Recording-Processing-Power-of-Any-DVR-Announces-HopperGO-for-Offline-Viewing-of-Recorded-Content?asPDF=1;
>
> https://rvseniormoments.com/tech-docs/dish-tv-for-rvs/hopper-3-use-in-an-rv/hopper-3-the-winegard-travler/; http://dishnetwork.ws/dpf/Hopper+3+Packet.pdf;
>
> https://www.mydish.com/support/same-video-2-tvs;
>
> https://www.mydish.com/support/products/hopper/how-to/manage/live-tv; and
>
> https://www.mydish.com/filestream.ashx?ID=14292.

26.     Defendant has infringed at least one claim of the '643 Patent (*e.g.*, claim 16) in the United States by making, using, offering for sale, selling, or importing the Accused Infringing DVR Device in violation of 35 U.S.C. § 271(a). *See, e.g.*, Preliminary Claim Chart (**Exhibit 2**).

27.     Plaintiff has been damaged by Defendant's infringement of the '643 Patent.

## COUNT II

(INFRINGEMENT OF U.S. PATENT NO. 6,429,903)

28.     Plaintiff incorporates the above paragraphs by reference.

29.     On July 18, 2000, predecessors-in-interest to Contemporary Display filed United States Patent Application No. 09/618,618 entitled "VIDEO ADAPTER FOR SUPPORTING AT LEAST ONE TELEVISION MONITOR" with the USPTO.

30.     Application No. 09/618,618 is a continuation-in-part of United States Patent Application No. 09/479,129, which was filed on Jan. 7, 2000 and issued as United States Patent No. 6,100,936, which is a continuation of Application No. 08/922,614, filed on September 3, 1997 and issued as United States Patent No. 6,028,643.

31.     The USPTO duly and lawfully issued Application No. 09/618,618 as U.S. Patent No. 6,429,903 ("the '903 Patent") on August 6, 2002.  A true and correct copy of the '903 Patent is attached hereto as "**Exhibit 3**" and is incorporated herein by reference.

32.     The '903 Patent is presumed valid.

33.     Plaintiff is the sole owner of the '903 Patent.

34.     The '903 Patent describes problems and shortcomings in the field of video adapters and their software.  *See, e.g.,* '903 Patent at col. 1, l. 21 – col. 3, l. 19.

35.     The '903 Patent describes products that address a technical problem—how to combine video adapters and control devices in order to determine what programming appears on what monitor as well as the manner in which the programming appears.  *See, e.g.,* '903 Patent at col. 1, l. 21 – col. 3, l. 19.

36.     The technological improvements described and claimed in the '903 Patent were not conventional, well-known, or routine at the time of their respective inventions but involved novel

7

and non-obvious approaches to problems and shortcomings prevalent in the art at the time. *See, e.g.,* '903 Patent at col. 1, l. 21 – col. 14, l. 67.

37.     The inventions claimed in the '903 Patent involve more than just the performance of well-understood, routine, or conventional activities known to the industry prior to the invention of such novel and non-obvious systems and devices. *See, e.g.,* '903 Patent at col. 1, l. 21 – col. 14, l. 67.

38.     The inventions claimed in the '903 Patent are directed to technological solutions to technological problems.

39.     The written description of the '903 Patent supports each of the limitations of the claims, allowing a POSITA to understand what the limitations cover and how the non-conventional and non-generic combination of claim elements differ markedly from and improved upon what may have been considered conventional, generic, or routine.  *See, e.g.,* '903 Patent at col. 1, l. 21 – col. 14, l. 67.

40.     As demonstrated by its citation in over 20 United States Patents by the USPTO, the '903 Patent represents a technical improvement in the area of delivering television programming which is categorized in domains for delivering navigational tools for providing information about and access to multiple channels or programs. *See*, *e.g.*,

http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&f=S&l=50&d=PTXT&RS=REF%2F6028643&Refine=Refine+Search&Query=REF%2F6429903.  The patents citing the '903 Patent include patents assigned to Mitsubishi, Sony Corporation, Samsung Electronics, Apple Computer, Intel Corporation, Texas Instruments Corporation, Hitachi, U.S. Philips Corporation, Ricoh Company, and Acer.

41.     Viewed in light of the specification, claims of the '903 Patent are ***not directed*** to basic tools of scientific and technological work, nor are they directed to a fundamental economic practice.

42.     The claims of the '903 Patent are ***not directed*** to the use of an abstract mathematical formula on any general-purpose computer, or a purely conventional computer implementation of a mathematical formula, or generalized steps to be performed on a computer using conventional activity.

43.     The claims of the '903 Patent are ***not directed*** to a method of organizing human activity or to a fundamental economic practice long prevalent in our system of commerce.

44.     The '903 Patent ***does not*** take a well-known or established business method or process and apply it to a general-purpose computer.

45.     As noted by the United States Patents, foreign patent documents, and other publications cited by the '903 Patent, the '903 Patent ***does not*** preempt the field of its invention or preclude use of other methods or systems of delivering television programming to multiple monitors.

46.     DISH uses, offers for sale, and sells DVRs in the United States, including, but not limited to, the Hopper 3 DVR with Joey receivers ("Accused Infringing DVR Device").

47.     The Accused Infringing DVR Device is a non-limiting example that was identified based on publicly available information, and Plaintiff reserves its right to identify additional infringing activities, products, and services, including, for example, on the basis of information obtained during discovery.

48.     The Accused Infringing DVR Device is a computer comprising a processor, mass memory capacity, input/out functionality, and circuitry for receiving at least one television

programming input and displaying television programming corresponding thereto on multiple television monitors, said circuitry comprising: (a) at least one television programming input port for coupling at least one source of television programming to said circuitry; (b) at least one television tuner; (c) a video multiplexer coupled to the television tuner and adapted to be coupled to a plurality of television monitors, said video multiplexer coupled to a bus of the computer; said multiplexer also adapted to receive television programming and feed said programming to said television monitors, according to commands entered into said computer and sent to said multiplexer via said bus.  *See, e.g.,*

> https://www.dish.com/features/whole-home/;
>
> https://www.mydish.com/filestream.ashx?ID=2658;  http://about.dish.com/2016-01-05-DISH-Unveils-Hopper-3-with-Enhanced-4K-Experience-Most-Simultaneous-Recording-Processing-Power-of-Any-DVR-Announces-HopperGO-for-Offline-Viewing-of-Recorded-Content;
>
> https://apps.fcc.gov/eas/GetApplicationAttachment.html?id=2740529;
>
> https://www.dish.com/cedia/downloads/Hopper-3-Feature-Sheet-with-52.0.pdf;
>
> https://www.dish.com/t/joey-receivers/; and
>
> http://dishnetwork.ws/dpf/Hopper+3+Packet.pdf.

49.    Defendant has infringed at least one claim of the '903 Patent (*e.g.*, claim 12) in the United States by making, using, offering for sale, selling, or importing the Accused Infringing DVR Device in violation of 35 U.S.C. § 271(a). *See, e.g.*, Preliminary Claim Chart (**Exhibit 4**).

50.    Plaintiff has been damaged by Defendant's infringement of the '903 Patent.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 6,492,997)

51.    Plaintiff incorporates the above paragraphs by reference.

10

52.     On June 24, 1998, predecessors-in-interest to Contemporary Display filed United States Patent Application No. 09/103,315 entitled "METHOD AND SYSTEM FOR PROVIDING SELECTABLE PROGRAMMING IN A MULTI-SCREEN MODE" with the USPTO.

53.     Application No. 09/103,315 is a continuation-in-part of United States Patent Application No. 09/018,541, which was filed on February 4, 1998.

54.     The USPTO duly and lawfully issued Application No. 09/103,315 as U.S. Patent No. 6,492,997 ("the '997 Patent") on December 10, 2002.  A true and correct copy of the '997 Patent is attached hereto as "**Exhibit 5**" and is incorporated herein by reference.

55.     The '997 Patent is presumed valid.

56.     Plaintiff is the sole owner of the '997 Patent.

57.     The '997 Patent describes problems and shortcomings in the field of delivering television programming that is categorized in domains and for delivering navigational tools for providing information about and access to multiple channels or programs.  *See, e.g.,* '997 Patent at col. 1, l. 26 – col. 3, l. 34.

58.     The '997 Patent describes systems and methods that address a technical problem—how to provide an interface for television program selection that improves the process of selecting programs.  *See, e.g.,* '997 Patent at col. 1, l. 26 – col. 3, l. 34.

59.     The technological improvements described and claimed in the '997 Patent were not conventional or routine at the time of their respective inventions but involved novel and non-obvious approaches to problems and shortcomings prevalent in the art at the time.  *See, e.g.,* '997 Patent at col. 1, l. 26 – col. 3, l. 34.

60.     The inventions claimed in the '997 Patent involve more than just the performance of well-understood, routine, or conventional activities known to the industry prior to the invention

of such novel and non-obvious systems, methods, and devices. *See, e.g.,* '997 Patent at col. 1, l. 26 – col. 3, l. 34.

61.     The inventions claimed in the '997 Patent are directed to technological solutions to technological problems.

62.     The written description of the '997 Patent supports each of the limitations of the claims, allowing a POSITA to understand what the limitations cover and how the non-conventional and non-generic combination of claim elements differ markedly from and improved upon what may have been considered conventional or generic.  *See, e.g.,* '997 Patent at col. 1, l. 26 – col. 40, l. 12.

63.     As demonstrated by its frequent citation (over 60) by the USPTO in other later-issued patents and reexaminations, the '997 Patent represents a substantial technical improvement in the area of delivering television programming which is categorized in domains for delivering navigational tools for providing information about and access to multiple channels or programs. *See*, *e.g.*,

http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&f=S&l=50&d=PALL&RS=REF%2F6445398&Refine=Refine+Search&Query=ref%2F6492997.  The patents citing the '997 Patent include patents assigned to Matsushita Electric, Hitachi, LG Electronics, Sony Corporation, Microsoft Corporation, and Comcast.

64.     Viewed in light of the specification, the '997 Patent claims are ***not directed*** to basic tools of scientific and technological work, nor are they directed to a fundamental economic practice.

65.     The claims of the '997 Patent are ***not directed*** to the use of an abstract mathematical formula on any general-purpose computer, or a purely conventional computer implementation of a mathematical formula, or generalized steps to be performed on a computer using conventional activity.

66.     The claims of the '997 Patent are ***not directed*** to a method of organizing human activity or to a fundamental economic practice long prevalent in our system of commerce.

67.     The '997 Patent ***does not*** take a well-known or established business method or process and apply it to a general-purpose computer.

68.     As noted by United States Patents and other publications cited by the '997 Patent, the '997 Patent ***does not*** preempt the field of its invention or preclude the use of other methods and systems of delivering television programming that is categorized in domains for delivering navigational tools for providing information about and access to multiple channels or programs.

69.     Defendant imports, uses, offers for sale, and sells the Accused Infringing DVR Device in the United States.

70.     The Accused Infringing DVR Device is a non-limiting example that was identified based on publicly available information, and Plaintiff reserves its right to identify additional infringing activities, products, and services, including, for example, on the basis of information obtained during discovery.

71.     The Accused Infringing DVR Device performs a method for presenting an interactive multi-window video display, the method comprising the steps: (a) receiving a multi-window real time video signal representing a multi-window video display corresponding to channels selected by a user in accordance with a category, comprising one or more reduced size video displays, and receiving a cell quantity data value corresponding to the number of reduced

size video displays in the multiwindow video signal; (b) generating an overlay grid having a number of cells equal to the cell quantity value; and (c) presenting the multi-window display together with the overlay grid so that the reduced size video displays are visible within the cells allowing selection of one of the plurality of reduced size video displays. *See, e.g.,*

> https://www.dish.com/dig/news/watch-four-games-at-once-with-sports-bar-mode/;
>
> https://www.mydish.com/filestream.ashx?ID=2658;
>
> https://www.dishpromotions.com/blog/watch-4-march-madness-games-at-once-with-dish-hopper-3/; https://youtu.be/-CwdvjdHD-I?t=167; https://youtu.be/-CwdvjdHD-I?t=170; https://youtu.be/-CwdvjdHD-I?t=178;
>
> https://www.mydish.com/support/products/receivers/hopper/how-to/multi-view;
>
> https://youtu.be/-CwdvjdHD-I?t=193; https://youtu.be/-CwdvjdHD-I?t=194;
>
> https://youtu.be/-CwdvjdHD-I?t=197; and http://bgr.com/2016/03/17/hopper-3-update-sports-bar-mode/.

72.     Defendant has infringed at least one claim of the '997 Patent (*e.g.*, claims 30 and 33-36) in the United States by making, using, offering for sale, selling, or importing the Accused Infringing DVR Device in violation of 35 U.S.C. § 271(a). *See, e.g.*, Preliminary Claim Chart (**Exhibit 6**).

73.     Plaintiff has been damaged by Defendant's infringement of the '997 Patent.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 7,500,202)

74.     Plaintiff incorporates the above paragraphs by reference.

75.     On September 30, 2002, predecessors-in-interest to Contemporary Display filed United States Patent Application No. 10/260,210 entitled "REMOTE CONTROL FOR

NAVIGATING THROUGH CONTENT IN AN ORGANIZED AND CATEGORIZED FASHION" with the USPTO.

76.     Application No. 10/260,210 is a continuation application of United States Patent Application No. 09/103,315, filed on June 24, 1998.

77.     The USPTO duly and lawfully issued Application No. 10/260,210 as U.S. Patent No. 7,500,202 ("the '202 Patent") on March 3, 2009.  The term of the '202 Patent is extended or adjusted under 35 U.S.C. 154(b) by 429 days.  A true and correct copy of the '202 Patent is attached hereto as "**Exhibit 7**" and is incorporated herein by reference.

78.     The '202 Patent is presumed valid.

79.     Plaintiff is the sole owner of the '202 Patent.

80.     The '202 Patent describes problems and shortcomings in the field of remote controls for navigating through content to view shows or to program a programming unit. *See, e.g.,* '202 Patent at col. 1, l. 31 – col. 2, l. 39; col. 3, l. 21-33.

81.     The '202 Patent describes apparatuses that address a technical problem—how to design a remote control for a programmable controller for improved functionality and navigation of a multi-channel video system.  *See, e.g.,* '202 Patent at col. 1, l. 31 – col. 2, l. 39; col. 3, l. 21-33, col. 8, l. 31 – col. 10, l. 39; Figs. 4A, 4B.

82.     The technological improvements described and claimed in the '202 Patent were not conventional, generic, or routine at the time of their respective inventions but involved novel and non-obvious approaches to problems and shortcomings prevalent in the art at the time.  *See, e.g.,* '202 Patent at col. 1, l. 31 – col. 2, l. 39; col. 3, l. 21-33, col. 8, l. 31 – col. 10, l. 39; Figs. 4A, 4B.

83.     The inventions claimed in the '202 Patent involve more than just the performance of well-understood, routine, or conventional activities known to the industry prior to the invention

of such novel and non-obvious devices. *See, e.g.,* '202 Patent at col. 1, l. 31 – col. 2, l. 39; col. 3, l. 21-33, col. 8, l. 31 – col. 10, l. 39; Figs. 4A, 4B.

84.     The inventions claimed in the '202 Patent are directed to technological solutions to technological problems.

85.     The written description of the '202 Patent supports each of the limitations of the claims, allowing a POSITA to understand what the limitations cover and how the non-conventional and non-generic combination of claim elements differ markedly from and improved upon what may have been considered conventional, generic, or routine.  *See, e.g.,* '202 Patent at col. 1, l. 31 – col. 2, l. 39; col. 3, l. 21-33, col. 8, l. 31 – col. 10, l. 39; Figs. 4A, 4B.

86.     The '202 Patent is cited in a dozen later-issued patents.  *See*, *e.g.*, http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&p=1&u=%2Fnetahtml%2FPTO%2Fsearch-bool.html&r=0&f=S&l=50&TERM1=7500202&FIELD1=UREF&co1=AND&TERM2=&FIELD2=&d=PTXT.   The patents citing the '202 Patent include patents assigned to Microsoft Corporation.

87.     Viewed in light of the specification, the '202 Patent claims are ***not directed*** to basic tools of scientific and technological work, nor are they directed to a fundamental economic practice.

88.     The claims of the '202 Patent are ***not directed*** to the use of an abstract mathematical formula on any general-purpose computer, or a purely conventional computer implementation of a mathematical formula, or generalized steps to be performed on a computer using conventional activity.

89.     The claims of the '202 Patent are **not directed** to a method of organizing human activity or to a fundamental economic practice long prevalent in our system of commerce.

90.     The '202 Patent **does not** take a well-known or established business method or process and apply it to a general-purpose computer.

91.     As noted by United States Patents and other publications cited by the '202 Patent, the '202 Patent **does not** preempt the field of its invention or preclude the use of other remote controls to program and navigate television channels.

92.     Defendant uses, offers for sale, and sells remote control devices in the United States that infringe at least one claim of the '202 Patent, including, but not limited to, the 50.0 Remote Control ("Accused Infringing Remote Control Device").

93.     The Accused Infringing Remote Control Device is a non-limiting example that was identified based on publicly available information, and Plaintiff reserves its right to identify additional infringing activities, products and services, including, for example, on the basis of information obtained during discovery.

94.     The Accused Infringing Remote Control Device is a remote control for interacting with a navigation system that allows content presented on a display device to be navigated in an organized and categorized fashion, the remote control comprising: operational controls located on at least three sides of the remote control for selecting content, the controls grouped by navigational function with a first group placed on a first side of the remote control, a second group placed on a second side of the remote control and a third group placed on a third side of the remote control, wherein one or more controls from a given group of the first group, second group or third group is operable to be used in conjunction with one or more controls not included within the given group; an infrared transmitter for transmitting instructions coded as infrared signals; and a programmable

controller, the controller operative to receive an indication that a control was selected and instruct the infrared transmitter to transmit an infrared signal corresponding to the control selected, wherein the remote control is configured to be grasped by one hand of a user with a thumb of the user in contact with the first side of the remote control and one or more fingers of the user in contact with the second and third sides of the remote control.  *See, e.g.,*

> https://www.mydish.com/support/products/remotes/50;
>
> https://www.mydish.com/support/products/remotes/customizablecommands;
>
> https://electronics.howstuffworks.com/inside-rc1.htm;
>
> https://electronics.howstuffworks.com/remote-control2.htm; and
>
> https://www.youtube.com/watch?v=BmEhCp0UE1k.

95.    Defendant has infringed, and continue to infringe, at least one claim of the '202 Patent (*e.g.*, claim 1) in the United States by making, using, offering for sale, selling, and/or importing the Accused Infringing Remote Control Device in violation of 35 U.S.C. § 271(a). *See, e.g.*, Preliminary Claim Chart (**Exhibit 8**).

96.    Defendant has also infringed, and continue to infringe, at least as of the date of service of this Complaint, at least one claim of the '202 Patent (*e.g.*, claim 1) by actively inducing others to use, offer for sale, and sell the Accused Infringing Remote Control Device.  Defendant's customers who use those devices in accordance with Defendant's instruction infringe at least one claim of the '202 Patent (*e.g.*, claim 1), in violation of 35 U.S.C. § 271(a).  Defendant intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installation and user guides, such as those located at:

- https://www.mydish.com/support/products/remotes/50; and

- https://www.mydish.com/support/products/remotes/customizablecommands.

Defendant also induces infringement by others by failing to remove or diminish the infringing features of the Accused Infringing Remote Control Device.  Defendant is thereby liable for infringement of the '202 Patent under 35 U.S.C. § 271(b).

97.     Defendant will have been on notice of the '202 Patent since, at the latest, the service of this Complaint upon it.  By the time of trial, Defendant will have known and intended (since receiving such notice) that their continued actions would actively induce and contribute to the infringement of at least one claim (e.g. claim 1) of the '202 Patent.

98.     Plaintiff has been damaged by Defendant's infringement of the '202 Patent.

## COUNT V

### (INFRINGEMENT OF U.S. PATENT NO. 7,809,842)

99.     Plaintiff incorporates the above paragraphs by reference.

100.     On February 1, 2009, predecessors-in-interest to Contemporary Display filed United States Patent Application No. 12/363,781 entitled "TRANSFERRING SESSIONS BETWEEN DEVICES" with the USPTO.

101.     Application No. 12/363,781 is a continuation of United States Patent Application No. 10/266,908, filed on October 8, 2002, and issued as United States Patent No. 7,487,248.

102.     The USPTO duly and lawfully issued Application No. 12/363,781 as U.S. Patent No. 7,809,842 ("the '842 Patent") on October 5, 2010.  A true and correct copy of the '842 Patent is attached hereto as "**Exhibit 9**" and is incorporated herein by reference.

103.     The '842 Patent is presumed valid.

104.     Plaintiff is the sole owner of the '842 Patent.

105.     The '842 Patent describes problems and shortcomings in the field of online communications sessions and transferring communications sessions. *See, e.g.,* '842 Patent at col. 1, l. 16 – col. 6, l. 55.

19

106.    The '842 Patent describes apparatuses and methods that address a technical problem—how to transfer communications and computer sessions from a first device to a second device such that the communication and computer sessions can be continued on the second device. *See, e.g.,* '842 Patent at col. 1, l. 16 – col. 6, l. 55.

107.    The technological improvements described and claimed in the '842 Patent were not conventional, generic, or routine at the time of their respective inventions but involved novel and non-obvious approaches to problems and shortcomings prevalent in the art at the time. *See, e.g.,* '842 Patent at col. 1, l. 16 – col. 16, l. 21.

108.    The inventions claimed in the '842 Patent involve more than just the performance of well-understood, routine, or conventional activities known to the industry prior to the invention of such novel and non-obvious systems and devices. *See, e.g.,* '842 Patent at col. 1, l. 16 – col. 16, l. 21.

109.    The inventions claimed in the '842 Patent are directed to technological solutions to technological problems.

110.    The written description of the '842 Patent supports each of the limitations of the claims, allowing a POSITA to understand what the limitations cover and how the non-conventional and non-generic combination of claim elements differ markedly from and improved upon what may have been considered conventional, generic, or routine. *See, e.g.,* '842 Patent at col. 1, l. 16 – col. 16, l. 21.

111.    As demonstrated by its citation (over 30) by the USPTO in other later-issued patents and reexaminations, the '842 Patent represents a substantial technical improvement in the field of transferring communication and computer sessions.

20

http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&f=S&l=50&d=PTXT&RS=REF%2F7500202&Refine=Refine+Search&Query=REF%2F7809842.   The patents citing the '842 Patent include patents assigned to Microsoft Corporation, Hitachi, Google, Sony, and Verizon.

112.    Viewed in light of the specification, the '842 Patent claims are ***not directed*** to basic tools of scientific and technological work, nor are they directed to a fundamental economic practice.

113.    The claims of the '842 Patent are ***not directed*** to the use of an abstract mathematical formula on any general-purpose computer, or a purely conventional computer implementation of a mathematical formula, or generalized steps to be performed on a computer using conventional activity.

114.    The claims of the '842 Patent are ***not directed*** to a method of organizing human activity or to a fundamental economic practice long prevalent in our system of commerce.

115.    The '842 Patent ***does not*** take a well-known or established business method or process and apply it to a general-purpose computer.

116.    As noted by United States Patents and other publications cited by the '842 Patent, the '842 Patent ***does not*** preempt the field of its invention or preclude all methods of transferring communications and computer sessions from a first device to a second device.

117.    Defendant makes, uses, offers for sale, distributes, and sells a software application ("app") used on devices in the United States that infringe at least one claim of the '842 Patent, such app including, but not limited to, the Defendant's Anywhere App (collectively the "Accused Infringing App Device").

118.    The Accused Infringing App Device is a non-limiting example that was identified based on publicly available information, and Plaintiff reserves its right to identify additional infringing activities, products and services, including, for example, on the basis of information obtained during discovery.

119.    The Accused Infringing App Device is an apparatus configured to continue a computer session that initially is between a first device and a second device via transfer of the computer session from the first device to the apparatus, the computer session employing a first communication link between the first device and the second device and the first device configured to operate as a proxy for the apparatus after transfer of the computer session to the apparatus, the apparatus having software stored thereon and configured to perform operations associated with the transfer of the computer session upon execution comprising: enabling a user of the apparatus to request transfer of the computer session; establishing a second communication link between the apparatus and the first device; receiving session context information from the first device corresponding to a context of the computer session on the first device; employing the session context information to continue the computer session on the apparatus via communications between apparatus and the second device, wherein after transfer of the computer session to the apparatus, communications associated with the computer session and between the apparatus and the second device are sent to and received from the first device using the second communication link.  *See, e.g.,*

https://www.dish.com/features/dish-anywhere/#one;

https://www.mydish.com/filestream.ashx?ID=2658;

https://dish-systems.com/dish-products/dish-apps/dish-anywhere/;

https://www.mydish.com/support/services/tv/mobile-viewing/dish-anywhere/how-tos/dishanywhere/how-to-use/managing/live-tv; and

https://play.google.com/store/apps/details?id=com.sm.SlingGuide.Dish&hl=en.

120.    Defendant has infringed, and continue to infringe, at least one claim of the '842 Patent (*e.g.*, claim 18) in the United States by making, using, offering for sale, selling, or importing the Accused Infringing App Device in violation of 35 U.S.C. § 271(a). *See, e.g.*, Preliminary Claim Chart (**Exhibit 10**).

121.    Defendant has also infringed, and continue to infringe, at least as of the date of service of this Complaint, at least one claim of the '842 Patent (*e.g.*, claim 18) by actively inducing others to use, offer for sale, and selling the Accused Infringing App Devices.   Defendant's customers who use those devices in accordance with Defendant's instructions infringe at least one claim of the '842 Patent (*e.g.*, claim 18), in violation of 35 U.S.C. § 271(a).   Defendant intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installation and user guides, such as those located at:

- https://www.dish.com/features/dish-anywhere/#one;

- https://www.mydish.com/filestream.ashx?ID=2658;

- https://dish-systems.com/dish-products/dish-apps/dish-anywhere/;

- https://www.mydish.com/support/services/tv/mobile-viewing/dish-anywhere/how-tos/dishanywhere/how-to-use/managing/live-tv; and

- https://play.google.com/store/apps/details?id=com.sm.SlingGuide.Dish&hl=en.

Defendant also induces infringement by others by failing to remove or diminish the infringing features of the Accused Infringing App Device.   Defendant is thereby liable for infringement of the '842 Patent under 35 U.S.C. § 271(b).

122.    Defendant will have been on notice of the '842 Patent since, at the latest, the service of this Complaint upon it.  By the time of trial, Defendant will have known and intended (since receiving such notice) that their continued actions would actively induce and contribute to the infringement of at least one claim of the '842 Patent (*e.g.*, claim 18).

123.    Plaintiff has been damaged by Defendant's infringement of the '842 Patent.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court:

A.    Enter judgment that Defendant has infringed one or more claims of the '643 Patent literally or under the doctrine of equivalents;

B.    Enter judgment that Defendant has infringed one or more claims of the '903 Patent literally or the doctrine of equivalents;

C.    Enter judgment that Defendant has infringed one or more claims of the '997 Patent literally or the doctrine of equivalents;

D.    Enter judgment that Defendant has infringed one or more claims of the '202 Patent literally or the doctrine of equivalents;

E.    Enter judgement that Defendant has induced infringement and continue to induce infringement of one or more claims of the '202 Patent;

F.    Enter judgement that Defendant has contributed to and continue to contribute to infringement of one or more claims of the '202 Patent;

G.    Enter judgment that Defendant has infringed one or more claims of the '842 Patent literally or the doctrine of equivalents;

H.    Enter judgement that Defendant has induced infringement and continue to induce infringement of one or more claims of the '842 Patent;

24

I.      Enter judgement that Defendant has contributed to and continue to contribute to infringement of one or more claims of the '842 Patent;

J.      Award Plaintiff past and future damages, to be paid by Defendant, in an amount no less than a reasonable royalty and adequate to compensate Plaintiff for such past and future damages, together with pre-judgment and post-judgment interest for Defendant's infringement of the '643 Patent, the '903 Patent, the '997 Patent, the '202 Patent, and the '842 Patent through the date that such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

K.      Declare this case exceptional pursuant to 35 U.S.C. § 285; and

L.      Award Plaintiff its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  September 19, 2018                          Respectfully submitted,

                                        By:   */s/ David R. Bennett*
                                             David R. Bennett
                                             (*Admitted W.D. Texas*)
                                             Illinois Bar No. 6244214
                                             **DIRECTION IP LAW**
                                             P.O. Box 14184
                                             Chicago, IL 60614-0184
                                             Telephone: (312) 291-1667
                                             e-mail:  dbennett@directionip.com

                                             Craig S. Jepson
                                             Texas State Bar No. 24061364

**TOLER LAW GROUP, PC**
8500 Bluffstone Cove, Suite A201
Austin, Texas 78759
Tel. (512) 327-5515
Fax (512) 327-5575
cjepson@tlgiplaw.com
**ATTORNEYS FOR PLAINTIFF**
**CONTEMPORARY DISPLAY LLC**